AO 106 (Rev. 04/10) Application for a Search Warrant

# UNITED STATES DISTRICT COURT
for the
Western District of Oklahoma

FILED
NOV - 3 2021
CARMELITA REEDER SHINN, CLERK
U.S. DIST. COURT, WESTERN DIST. OKLA.
BY_____, DEPUTY

In the Matter of the Search of )
*(Briefly describe the property to be searched* )
*or identify the person by name and address)* ) Case No. M-21- 631 -SM
)
a Samsung Galaxy cell phone, IMEI number )
350593473465243, with a black front and blue backing, )
which is currently in the custody of FBI Oklahoma City )

## APPLICATION FOR A SEARCH WARRANT

I, a federal law enforcement officer or an attorney for the government, request a search warrant and state under penalty of perjury that I have reason to believe that on the following person or property *(identify the person or describe the property to be searched and give its location)*:

See Attachment A

located in the ___Western___ District of ___Oklahoma___, there is now concealed *(identify the person or describe the property to be seized)*:

See Attachment B

The basis for the search under Fed. R. Crim. P. 41(c) is *(check one or more)*:
☑ evidence of a crime;
☑ contraband, fruits of crime, or other items illegally possessed;
☑ property designed for use, intended for use, or used in committing a crime;
☐ a person to be arrested or a person who is unlawfully restrained.

The search is related to a violation of:

| Code Section | Offense Description |
|---|---|
| 21 U.S.C. § 841(a)(1) | Possession of a Controlled Substance with Intent to Distribute |

The application is based on these facts:
See attached Affidavit

☑ Continued on the attached sheet.
☐ Delayed notice of _____ days (give exact ending date if more than 30 days: _____) is requested under 18 U.S.C. § 3103a, the basis of which is set forth on the attached sheet.

_____
*Applicant's signature*

Marc Jones, Special Agent FBI
*Printed name and title*

Sworn to before me and signed in my presence.

Date: Nov. 3 2021

_____
*Judge's signature*

City and state: Oklahoma City, Oklahoma

Suzanne Mitchell, U.S. Magistrate Judge
*Printed name and title*

# THE UNITED STATES DISTRICT COURT FOR THE WESTERN DISTRICT OF OKLAHOMA

## AFFIDAVIT IN SUPPORT OF
## AN APPLICATION FOR A SEARCH WARRANT

I, Marc Jones, Special Agent with the Federal Bureau of Investigation (FBI), having been duly sworn, depose and state as follows:

1. I am a federal law enforcement officer of the United States within the meaning of Federal Rule of Criminal Procedure 41.

2. I have been a Special Agent with the FBI since April 2021. I am currently assigned to the Oklahoma City Division, where I am assigned to the Criminal Enterprise Squad, which is responsible for investigating street gang and drug-related offenses. Since becoming a Special Agent, I have been trained in a variety of investigative matters which involved the unlawful distribution of drugs in violation of 21 U.S.C. §§ 841(a)(1) and 846. Prior to joining the FBI, from October 2015 to March 2021, I was a Child Protective Services Specialist. In that capacity, I investigated allegations of child abuse and/or neglect and reported the findings of my investigations to the District Attorney's Office. Through my training and experience, I have become familiar with the methods and operation of drug distributors, including their common organizational structures, use of violence, methods of distributing, storing, and transporting drugs, and methods of collecting and laundering drug proceeds.

As an FBI Special Agent, I have executed search and arrest warrants, conducted physical surveillance, coordinated controlled purchases with confidential sources, analyzed records documenting the purchase and sale of illegal drugs, and spoken with informants and subjects, as well as other local and federal law enforcement officers, regarding the manner in which drug distributors obtain, finance, store, manufacture, transport, and distribute their illegal drugs.

3. As an FBI agent, I have learned that individuals involved in drug trafficking often do the following:

    A. Traffickers in controlled substances frequently maintain, on hand, large amounts of United States currency in order to maintain and finance their ongoing illicit business;

    B. It is common practice for drug traffickers to maintain books, records, receipts, notes, ledgers, airline tickets, receipts relating to the purchase of financial instruments and/or the transportation, ordering, sale, and distribution of controlled substances; that the aforementioned books, records, receipts, notes, ledgers, etc., are maintained for extended periods of time at a place where traffickers have ready access to them;

    C. It is common practice for drug traffickers to hide contraband, proceeds of drug sales and records of drug transactions in secure locations within their residence, their vehicles, their business, or other locations which they maintain dominion and control over, for ready access and to conceal these items from law enforcement authorities;

    D. It is common for persons involved in trafficking of controlled substances to maintain evidence pertaining to their obtaining, secreting, transferring, concealing, and/or expenditure of proceeds, such as: currency, financial instruments, precious metals and gemstones, jewelry, books, records, invoices, receipts, records of real estate transactions, bank statements and related records, passbooks, money

drafts, letters of credit, money orders, bank drafts, cashiers' checks, bank checks, safe deposit keys, and money wrappers;

  E. These items are maintained by the traffickers within their residences, in safes, vehicles, businesses, or other locations over which they maintain dominion and control;

  F. That experienced, well-organized, drug traffickers often utilize electronic equipment such as computers, digital pagers, telex machines, facsimile machines, cellular telephones, electronic voice mail, and telephone answering machines to generate, transfer, count, record, and/or store drug related information or information related to drug proceeds;

  G. When drug traffickers amass large amounts of proceeds from the sale of drugs, they attempt to legitimize these profits through money laundering activities;

  H. To accomplish these goals, drug traffickers utilize including, but not limited to: domestic and international banks and their attendant services, securities brokers, professionals, such as attorneys and accountants, casinos, real estate, shell corporations and business fronts, and otherwise legitimate businesses which generate large quantities of currency;

  I. The sale of controlled substances generates large quantities of United States currency in small denominations;

  J. It is common for drug traffickers to physically handle and count the monies after receiving it in exchange for the narcotics, thereby leaving residue traces of controlled substances on the monies;

  K. Drug traffickers commonly maintain addresses or telephone numbers in books or papers which reflect names, addresses, and/or telephone numbers of their associates in the trafficking organization;

  L. Drug traffickers take, or cause to be taken, photographs and videos of themselves, their associates, their property and their product; that these drug traffickers usually maintain these photographs within their possession, in their residences, vehicles, businesses, or other locations which they maintain dominion and control over;

M.   Money launderers register multiple businesses which deal in cash transactions in order to filter the illegal proceeds;

N.   Oftentimes, these businesses are listed to drop boxes and the businesses themselves do not have a physical address;

O.   Experienced, well-organized, drug traffickers and their associates often purchase and/or title their assets in fictitious names, aliases or the names of relatives, associates, or business entities, to avoid detection of these assets by law enforcement agencies; and although these assets are in other names, traffickers actually own and continue to use these assets and exercise dominion and control over them

4.   The information contained in this Affidavit is submitted for the limited purpose of establishing probable cause to secure a search warrant for a **Samsung Galaxy cell phone, IMEI number 3505934734654243, with a black front and blue backing** (the **TARGET DEVICE**)—as further described in **Attachment A**, which is incorporated into this Affidavit by reference. The FBI in Oklahoma City has custody of the **TARGET DEVICE** in Oklahoma City, Oklahoma. I am submitting this Affidavit in support of a search warrant authorizing a search of the **TARGET DEVICE** for the items specified in **Attachment B** hereto, wherever they may be found, and to seize all items in **Attachment B** as instrumentalities, fruits, and evidence of the aforementioned crimes.

5.   This Affidavit is based upon my personal investigation and upon information received from other law enforcement officers and agents and may not include all evidence or information available or of all facts known to me

relative to this investigation. Rather, I have set forth only the facts that I believe are necessary to establish probable cause for the requested warrant.

## BACKGROUND REGARDING CELLULAR DEVICES

6. Based upon my training and experience, I am aware:

   A. Individuals involved in trafficking illegal narcotics and bulk cash smuggling often use cellular phones to maintain contact with other co-conspirators, including suppliers, transporters, distributors, and purchasers of illegal narcotics and/or drug proceeds. Such cell phones and their associated memory cards commonly contain electronically stored information which constitutes evidence, fruits, and instrumentalities of drug trafficking and bulk cash smuggling offenses including, but not limited to, the phone directory and/or contacts list, calendar, text messages, e-mail messages, call logs, photographs, messaging applications, and videos.

   B. Drug dealers and bulk cash smugglers often switch phones in order to avoid detection from law enforcement, and that drug dealers and bulk cash smugglers often have multiple phones that they use for different co-conspirators in order to separate their drug dealing and/or bulk cash smuggling.

   C. Drug dealers keep old cellular telephones no longer in use in order to save telephone numbers of other co-conspirators, as well as other relevant information including text messages and photographs.

   D. Individuals involved with sending/receiving controlled substances through the U.S. Mail will often utilize their cellular phones to access the internet in order to search for parcel tracking numbers and or to receive parcel tracking status updates identifying the arrival of suspect parcels.

   E. Drug dealers and users oftentimes have stored photographs, videos and/or text and voice messages associated with the use and distribution of controlled dangerous substances and proceeds derived

therefrom for their own records and/or for the purpose of furthering their distribution activity maintained on their cellular telephones and other electronic handheld devices.

F. Drug distributors/consumers and bulk cash smugglers will often use coded words and phrases and vague references in order to discuss their plans and prevent anyone from overhearing their conversations and from recognizing that the conversations concern a criminal conspiracy.

G. Prospective drug purchasers, recipients, and/or users will often telephone the drug distributor to obtain permission to come to the distributor's location i.e. his business, residence, etc., to obtain the drug; similarly, bulk cash smugglers will often telephone their co-conspirators to coordinate the delivery of the bulk cash proceeds to be smuggled.

H. Drug distributors will often have "sales people" bring prospective drug purchasers to him or her and these sales people will receive payment in cash, or in kind (a quantity of drugs), for bringing drug users/buyers to the distributor. These "sales people" often use the telephone to contact the distributor by voice or text message to arrange these meetings.

**PROBABLE CAUSE**

7. On October 20, 2021, the FBI and Oklahoma City Police Department (OCPD) executed a search warrant at 3913 S. Harvey Avenue, Oklahoma City, Oklahoma (the RESIDENCE), a single-family home belonging to Josue Lopez (LOPEZ). Pursuant to that search warrant, law enforcement seized approximately $24,102 in U.S. Currency, as well as 4.3 kilograms (total package weight) of a white, powdery substance, which field-tested positive for cocaine. In the kitchen of the RESIDENCE, specifically on the kitchen island,

law enforcement found approximately 56 grams of cocaine, a digital scale, and the **TARGET DEVICE**. Upon locating the **TARGET DEVICE**, law enforcement called the phone number that LOPEZ had previously used to coordinate drug deals with a cooperating source (CS). The **TARGET DEVICE** then rang, thereby alerting investigators that LOPEZ had previously used the **TARGET DEVICE** to communicate with the CS.

8. Other evidence of drug trafficking was also found in the RESIDENCE. In a safe in the master bedroom, law enforcement located approximately 3.5 kilograms of cocaine, $23,955 in U.S. Currency, and two firearms.

9. At the time of the search warrant, LOPEZ's wife, Marlene Martinez, and their minor child were present at the RESIDENCE. Officers located items of dominion and control throughout the RESIDENCE, including pieces of mail addressed to LOPEZ. LOPEZ—whose vehicle had been subject to a traffic stop simultaneous to the execution of the search warrant—was placed under arrest. LOPEZ had a different cell phone, specifically an Apple iPhone, with an unknown serial number, bearing a black front and gray backing, in his possession at the time of arrest. The Apple iPhone, the **TARGET DEVICE**, and the above-described contraband, were all seized by investigators and checked into the Oklahoma City FBI Evidence Control Room.

## ELECTRONIC STORAGE AND FORENSIC ANALYSIS

10. Based on my knowledge, training, and experience, I know that electronic devices can store information for long periods of time. Similarly, things that have been viewed via the Internet are typically stored for some period of time on the device. This information can sometimes be recovered with forensics tools.

   a. *Forensic evidence.* This application seeks permission to locate not only electronically stored information that might serve as direct evidence of the crimes described on the warrant, but also forensic evidence that establishes how the device was used, the purpose of its use, who used it, and when.

   b. *Nature of examination.* The examination may require authorities to employ techniques, including but not limited to computer-assisted scans of the entire medium, that might expose many parts of the device to human inspection in order to determine whether it is evidence described by the warrant.

   c. *Manner of execution.* Because this warrant seeks only permission to examine a device already in law enforcement's possession, the execution of this warrant does not involve the physical intrusion onto a premises. Consequently, I submit there is reasonable cause for the Court to authorize execution of the warrant at any time in the day or night.

## MANNER OF SEARCH

11. I would note that based upon his aforementioned training and experience, relevant and/or incriminating text messages, videos, and photographs oftentimes are comingled on cellular telephones and electronic handheld devices with text messages, videos, and photographs which do not have an evidentiary value. However, criminals engaged in communications

furthering the nature of their criminal enterprise, in particular with investigations involving the use/distribution of controlled dangerous substances, many of these communications will involve cryptic/guarded and or otherwise coded jargon which is oftentimes utilized to conceal the nature of their illegal communication. As a result, a limited review of the content of each communication will be necessary to determine the nature of the communication and whether it is relevant to that information particularly set forth above within this Affidavit.

12. Searching the electronic handheld device for the evidence described above may require a range of data analysis techniques. In some cases, it is possible for agents to conduct carefully targeted searches that can locate evidence without requiring a time-consuming manual search through unrelated materials that may be commingled with criminal evidence. For example, agents may be able to execute a "keyword" search that searches through the files stored in a computer for special words that are likely to appear only in the materials covered by a warrant. Similarly, officers may be able to locate the materials covered in the warrant by looking for particular directory or file names. In other cases, however, such techniques may not yield the evidence described in the warrant. Criminals can mislabel or hide files to evade detection; or take other steps designed to frustrate law enforcement searches for information. These steps may require officers to conduct more

extensive searches, such as scanning areas of the device's memory not allocated to listed files, or opening every file and scanning its contents briefly to determine whether it falls within the scope of the warrant. In light of these difficulties, your Affiant requests permission to use whatever data analysis techniques necessary and available to locate and retrieve the evidence described above.

## AUTHORIZATION REQUESTS

13. Based on the above information, there is probable cause to believe that violations of 21 U.S.C. § 841(a)(1) have occurred, and that evidence, fruits, and instrumentalities of these offenses are located on the **TARGET DEVICE**—which was found in LOPEZ's home and which he used to coordinate controlled buys with a CS. Therefore, I respectfully request that this Court issue a search warrant for the **TARGET DEVICE**, described in **Attachment A**, authorizing the seizure of the items described in **Attachment B**.

_____
MARC JONES
Special Agent, FBI

SUBSCRIBED AND SWORN to before me this 3d day of November 2021.

_____
SUZANNE MITCHELL
United States Magistrate Judge

## ATTACHMENT A

### DESCRIPTION OF DEVICE TO BE SEARCHED

**Target Device**: a Samsung Galaxy cell phone, IMEI number 350593473465243, bearing a black front and blue backing, and which is depicted below.



## ATTACHMENT B

## LIST OF ITEMS TO BE SEIZED

All records on the **TARGET DEVICE** described in **Attachment A** that relate to violations of law, including 21 U.S.C. § 841(a)(1) (Possession with Intent to Distribute Controlled Substances). The items to be seized include:

a. Stored communications which are voice recordings/messages, text messages (SMS) and multimedia messages (MMS), emails and attachments, read or unread which relate to and provide evidence of criminal activity described in this affidavit;

b. Stored communications voice or text based located within downloadable messaging applications or social media applications;

c. All internet usage history that may reveal evidence of drug trafficking or bulk cash smuggling, such as package tracking, internet mail communications, electronic payment receipts, etc.;

d. Call logs/histories depicting incoming/outgoing numbers dialed to and from the **TARGET DEVICE** which relate to and provide evidence of the above described criminal activity and further described in this affidavit;

e. Internet World Wide Web (WWW) browser files including browser history, browser cache, browser favorites, auto-complete form history and stored passwords;

f. Contacts, address books and calendars, customer lists and related identifying information such as names, nicknames and/or monikers within the above described telephone device which relate to and provide evidence of the above described criminal activity and further described in this affidavit;

g. Photographs, audio/video recordings with their associated metadata relating to and which provide evidence of the above described criminal activity and further described in this affidavit;

h. Stored location information including global positioning system (GPS) data indicating coordinates, way points, tracks and locations in which the phone has traveled; and,

i. Data and user records/information, password(s) that would assist in identifying/confirming the owner(s)/user(s) of the above referenced property to be searched.